**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) RUBY J. DISNEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-19-946-PRW |
| | ) |
| (1) UNITED NATIONAL LIFE | ) |
| INSURANCE COMPANY OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MOTION TO QUASH AND**
**FOR PROTECTIVE ORDER, AND BRIEF IN SUPPORT**

Pursuant to FED. R. CIV. P. 30(a)(2)(A)(ii), 26(b)(2), and 26(c)(1), Defendant United National Life Insurance Company ("UNL" or "Defendant") respectfully requests that the Court enter an Order (1) quashing Plaintiff Ruby J. Disney's ("Plaintiff") July 20, 2020 Notice of Video Deposition of Defendant's Corporate Representative [Doc. 26] ("Second 30(b)(6) Notice") and (2) holding that Plaintiff may not take a second FED. R. CIV. P. 30(b)(6) deposition of a UNL corporate representative.

**PERTINENT FACTS**

1. On June 1, 2020, UNL filed a Motion for Summary Judgment ("UNL's MSJ"). [Doc. 16]. Relevant to this Motion, UNL's MSJ:

   a. Explained that the policy under which Plaintiff filed a claim and brought this lawsuit terminated because Plaintiff failed to satisfy the policy's terms for continuation by submitting to UNL a written request to continue within 31 days of the death of the named insured. [*Id*. at pp. 2-3, 5, 7].

   b. Explained why any bad faith claim premised on allegations that UNL failed to issue a new policy to Plaintiff after she eventually provided UNL with a written request for continuation of insurance fails as a matter of law. [*Id*. at pp. 8-9].

    c. The entire policy that is the subject of this lawsuit was attached to UNL's MSJ as Exhibit 1.

    d. Exhibit 9 of UNL's MSJ was a declaration of Lesley Hanslope, which explained that UNL's practice, upon receiving a spouse's written request to continue insurance upon the death of the named insured, is to issue a new policy in the name of the surviving spouse under the same terms as the prior policy.

2. The day after confirming receipt of UNL's MSJ, counsel for Plaintiff requested a corporate representative deposition pertaining to "the policies and practices discussed in the Affidavit attached to your dispositive motion that was filed on June 1st." [Ex. 1, p. 2].

3. On June 4, 2020, Plaintiff filed a Notice of Video Deposition of Defendant's Corporate Representative [Doc. 17], which identified the following inquiry topics:

    a. Defendant's policies and practices for "continuation of insurance" situations arising from the death of insureds such as Billy Disney during 2017-2020.

    b. Defendant's policies and practices for handling claims submitted under circumstances comparable to those involved in Plaintiff's claim and based upon the type of insurance policy underlying this case during 2017-2020; and

    c. Any manuals or claim handling guidelines governing or related to the manner in which Defendant's employees should handle the situations specified in topics 1-2 during 2018-2020.

4. On July 2, 2020, Plaintiff's counsel took the deposition of Lesley Hanslope, Vice-president of Claims and Customer Service, in her individual capacity and as UNL's corporate representative with respect to each of the items in Plaintiff's June 4, 2020 Notice. Relevant to this Motion:

    a. Lesley Hanslope satisfied her obligations as a corporate representative under FED. R. CIV. P. 30(b)(6), and she substantively responded to all of the questions Plaintiff's counsel asked of her, with the only exception being that she was not sure about the training claims supervisors received with respect to the unusual situation in which notice of the death of the named insured is

       received in close proximity to a claim for benefits. [2020-7-2 Hanslope Depo. ("Hanslope Depo."), Ex. 2, at pp. 98-100].

    b. With the exception noted above, Ms. Hanslope did not avoid responding to any questions on the basis of lack of knowledge, and UNL's counsel objected to only two lines of questioning as being outside the scope of Plaintiff's notice: (i) UNL's current litigation position with respect to whether the subject policy was properly terminated and Plaintiff's claim is not payable and (ii) the performance review history of the adjuster who reviewed Plaintiff's December 2018 claim. [*Id*. at pp. 19-22 & 83]. Ms. Hanslope answered the questions notwithstanding the objections.

    c. Plaintiff's counsel also confirmed Ms. Hanslope's ability to testify regarding the "termination of the first diagnosis cancer policy at issue in this action and requirements for continuation of policy." [Id. at p. 10]

    d. Ms. Hanslope was prepared to continue answering any of Plaintiff's questions regarding UNL's policies and procedures relating to continuation and/or termination of the policy that is the subject of this lawsuit, but Plaintiff's counsel unilaterally and voluntarily concluded the deposition after only three hours and 15 minutes of questioning. [*Id*. at p. 178].

5. Less than one hour after voluntarily terminating the corporate representative deposition he had requested, Plaintiff's counsel requested another 30(b)(6) deposition with respect to "policy termination, continuation of coverage and 'return of premium rider benefit' practices and standards of UNL during the relevant time period (2018-2020) including what occurred with Mrs. Disney's cancer policy after her first contact during late November 2018." [Ex. 3].

6. After Plaintiff's counsel set forth his request in greater detail, counsel for UNL advised that UNL could not agree to the second request because "[t]here is no reason you should need to depose United National twice under the circumstances that exist here." [Ex. 4].

7. On July 20, 2020, without seeking leave of court as required by FED. R. CIV. P. 30(a)(2)(A)(ii), Plaintiff filed the Second 30(b)(6) Notice [Doc. 26], which identified the following inquiry topics:

1. How and why Mrs. Disney's cancer policy was terminated by Defendant's policy services department;
2. Any guidelines or procedure documents applicable to the type of termination referenced in topic 1;
3. How and why Defendant's policy services department failed to issue a new policy to Mrs. Disney or continue the subject policy;
4. Any guidelines or procedure documents applicable to the issuance or continuations of policies referenced in topic 3;
5. Defendant's policy services department's practices and procedures for responding to notice of a policyholder's death under this type of policy including, but not limited to, any efforts to inform spouses of their right to continue policies and any follow up of such efforts;
6. Any guidelines or procedure documents memorializing the practices or procedures referenced in topic 5;
7. Defendant's practices and procedures for how to handle documents provided by insureds such as pathology reports, medical bills, medical records and death certificates submitted by insureds under this type of policy;
8. Any guidelines or procedure documents memorializing the practices or procedures referenced in topic 7;
9. Defendant's practices and procedures for documenting and distributing information provided during phone calls with insureds or others acting on their behalf;
10. Any guidelines or procedure documents memorializing the practices or procedures referenced in topic 9;
11. Manner in which the subject cancer policy was sold to the Mr. and Mrs. Disney;
12. Any guidelines or procedure documents memorializing how such sales should take place covering the year in which the subject policy was sold to present day;

13. Any brochures or other materials used by agents who sold this type of policy on Defendant's behalf from the year in which the subject policy was sold to present day;

14. Why Defendant is structured in a manner that keeps claims adjusters from being able to review recordings or transcripts of phone calls with insureds without seeking intervention of supervisors; and

15. Why UNL's system for processing information and documents provided by insureds results in claim adjusters and policy service employees not receiving or seeing some information or documents provided by insureds.

8. On August 4, 2020, counsel for UNL unsuccessfully conferred in good faith with counsel for Plaintiff in an effort to resolve this discovery dispute without the Court's intervention.

## ARGUMENT AND AUTHORITIES

### I. Plaintiff's Second 30(b)(6) Notice is invalid

FED. R. CIV. P. 30(a)(2)(A)(ii) requires parties to obtain leave of court before seeking to examine a person who has already been deposed in a case. The only federal appellate court that has considered the issue has held that this rule applies with equal force to corporate representatives deposed under 30(b)(6) as to individual witnesses. *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001) (affirming district court's decision to quash, as invalid, second 30(b)(6) deposition subpoena issued without leave of court). Many district courts, including some within the Tenth Circuit, have reached the same conclusion. *State Farm Mut. Auto Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 235 (E.D. Pa. 2008); *Flynn v. FCA US LLC*, Case No. 3:15-cv-855-SMY-RJD, 2019 WL 4861015, *4 (S.D. Ill. Oct. 2, 2019); *Schultz v. Daimler Trucks N. Am.*, Case No. 12-CV-228-S, 2014 WL 11515824, *2 (D. Wy. Sept. 5, 2014); *Groupion, LLC v. Groupon,*

*Inc.*, Case No. 11-0870 MEJ, 2012 WL 359699, *5 (N.D. Cal. Feb. 2, 2012); *Blackwell v. City & County of San Francisco*, Case No. C-07-4629 SBA, 2010 WL 2608330, *1 (N.D. Cal. June 25, 2010); *Foreclosure Mgmt. Co. v. Asset Mgmt. Holdings, LLC*, Case No. 037-2388-DJW, 2008 WL 3895474, *3 (D. Kan. Aug. 21, 2008). To the extent Oklahoma district courts have reached the opposite result, they have done so perfunctorily, without distinguishing, or apparently accounting for, the First Circuit's analysis in *Ameristar*. *See Hamilton v. Bayer Healthcare Pharms., Inc.*, Case No. CIV-18-1240-C, 2019 WL 3291571, *3 (W.D. Okla. July 22, 2019); *Willig v. Conseco Senior Health Ins. Co.*, Case No. 04-CV-923-TCK-FHM, 2006 WL 8458649, *2 (N.D. Okla. May 19, 2006).

Because Plaintiff did not seek leave of court before filing her Second 30(b)(6) Notice, it is invalid under FED. R. CIV. P. 30(a)(2)(A)(ii) and should be quashed.

**II.    A second FED. R. CIV. P. 30(b)(6) deposition of a UNL corporate representative is improper under FED. R. CIV. P. 30(a)(2)(A)(ii) and 26(b)(2).**

Even if Plaintiff had sought leave before filing her Second 30(b)(6) Notice, UNL would nonetheless be entitled to a protective order pursuant to FED. R. CIV. P. 30(a)(2)(A)(ii) and 26(b)(2). Where a party seeks multiple 30(b)(6) depositions because it failed, in the first instance, to draft a comprehensive deposition notice, the entity from which discovery is sought is entitled to protection under FED. R. CIV. P. 26(b)(2) and 26(c)(1). Discovering parties should not be permitted "to avoid drafting a comprehensive notice of deposition and instead conduct depositions seriatim, thereby shifting costs to the opposing side, which would be forced to expend resources preparing for several Rule 30(b)(6) depositions, instead of one." *State Farm*, 154 F.R.D. at 236.

Parties from whom discovery is sought are especially entitled to protection where, as here, there has been no narrowing or introduction of new issues since the issuance of the original deposition notice, issues in the second notice are duplicative of those in the first notice and, most importantly, the discovering party chose not to avail itself of ample opportunity during the first deposition to obtain information it now seeks through a second deposition. *See, e.g., Schultz*, 2014 WL 11515824 at *5 (where plaintiff's counsel asked questions touching on the topics in the second notice during the first deposition, the 30(b)(6) witness answered questions asked and did not evade responding on the basis that he did not have knowledge or was unaware of how to answer the questions, "Plaintiff will not be allowed to use the second deposition as a means to supplement the shortcomings of the first deposition."); *Blackwell*, 2010 WL 2608330 at *2 ("Here, it is clear that Plaintiff had an opportunity to obtain the information now sought through the first deposition."). The court in *Groupion* was especially persuaded that the discovering party should not be permitted a second bite at the apple where it voluntarily terminated the prior deposition early even though the 30(b)(6) witness was available and willing to continue with the deposition. *Groupion*, 2012 WL 359699 at *6. In that case, the discovering party requested a second deposition a mere three days after examining the first 30(b)(6) witness for only 6.5 hours. *Id*. at **1&5.

The foregoing analysis weighs overwhelmingly in favor of protecting UNL from the inconvenience, burden, and expense of a second unreasonably duplicative 30(b)(6) deposition, especially where Plaintiff had ample opportunity to obtain the information she seeks during the first deposition. The legal issues, as stated in the pleadings and in UNL's

MSJ, remain exactly as they were when Plaintiff filed her first 30(b)(6) notice. UNL should not have to bear additional burden and expense of preparing and appearing for a second 30(b)(6) deposition that Plaintiff requests only because of the shortcomings of her inquiry during the first deposition. Further, the *Groupion* court was persuaded that a second 30(b)(6) deposition would not be consistent with FED. R. CIV. P. 26(b)(2)(B)'s mandatory limits on discovery[1] where the discovering party voluntarily terminated the first 30(b)(6) deposition after only 6.5 hours and then requested a second 30(b)(6) deposition three days later. How much more is UNL entitled to protection where Plaintiff's counsel voluntarily terminated Lesley Hanslope's deposition after only 3.25 hours and then, less than one hour later, demanded a second 30(b)(6) deposition?

An additional reason to enter a protective order in favor of UNL is that topics 11-15 in Plaintiff's Second 30(b)(6) Notice are wholly irrelevant to the claims and defenses in this lawsuit, and are therefore outside the scope of permissible discovery under FED. R. CIV. P. 26(b)(1). The Petition originally filed by Plaintiff in Oklahoma County does not contain any allegations even arguably relating to the sale of the subject policy (which occurred in 2011), brochures or materials relating to such sale, or UNL's business structure, and there is otherwise no reason to permit discovery into these topics.

## **CONCLUSION**

For the foregoing reasons, United National Life Insurance Company respectfully requests that this Court enter an Order (1) quashing Plaintiff's Second 30(b)(6) Notice and

---

[1] "[T]he party seeking discovery has had ample opportunity to obtain the information by discovery in the action".

(2) holding that Plaintiff may not take a second F<span>ED</span>. R. C<span>IV</span>. P. 30(b)(6) deposition of a UNL corporate representative.

Respectfully submitted,

*/s/ Leasa M. Stewart*
Leasa M. Stewart, OBA # 18515
Kyle Evans, OBA # 22135
GABLEGOTWALS
One Leadership Square, 15th Floor
211 North Robinson
Oklahoma City, OK 73102-7101
(405) 235-5500 | (405) 235-2875 (fax)
lstewart@gablelaw.com

***Attorneys for Defendant United National Life Insurance Company***

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2020, the foregoing document was filed with the Clerk of Court, and will be transmitted to the following ECF Registrants:

Steven S. Mansell
Mark A. Engel
Keith F. Givens

*/s/ Leasa M. Stewart*
Leasa M. Stewart